CASE No. 2:09cv02297-STA-tmp

IN THE
UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION
AT MEMPHIS

HOWARD JEFFERSON ATKINS,
PETITIONER-APPELLANT,

v.

JAMES M. HOLLOWAY, WARDEN,
RESPONDENT-APPELLEE.

ON REMAND FROM
THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
CASE NO. 12-6498

**PETITIONER'S AMENDED TRAVERSE OF RESPONDENT'S ANSWER**

COMES NOW, Petitioner, Howard J. Atkins, pro se, and presents this Amended Traverse of the Respondent's Answer (D.E. #60). Petitioner stipulates that Respondent's Statement of the Case and Summary of the Evidence are generally accurate. Petitioner otherwise denies each and every allegation of the Respondent and continues to assert that he is held in violation of the Constitution and laws of the United States.

Preliminarily, Petitioner would state that the Respondent's contentions are absurd. The Respondent relies on a game of smoke and mirrors that obfuscates the facts of this case, places a burden on the Petitioner that he is not required to meet, and *at minimum*

shows the need for an evidentiary hearing in this matter. A hearing is required by AEDPA if: (1) the Petitioner alleges facts that, if true, would entitle him to relief on habeas corpus; (2) the state court has not, after a full and fair hearing, reliably found the facts; and (3) the petition does not consist solely of conclusory, unsworn statements unsupported by any proof. *(Phillips v. Woodford, 267 F.3d 96, 973 (9th Cir. 2001); Earp v. Ovonski, 431 3d 1148, 1167 (9th Cir. 2005)* When deciding to grant a hearing, the court must accept as "true" the facts that the Petitioner alleged.

The Petitioner will now present a brief argument of each facet of his case to refute the Respondent's contentions.

## ARGUMENT

## GROUND ONE – PETITIONER'S EIGHTH AMENDMENT MILLER CLAIM

This issue was presented as Ground One in Petitioner's brief but was relegated to a few paragraphs at the end of Respondent's brief (D.E. #60, pg. 27). Petitioner presents it first to maintain comity with his initial filing.

The Respondent, respectfully, is completely erroneous in his understanding of this claim. Further, he has chosen to assert that the holdings of *Miller v. Alabama (132 S.Ct.2455,183L.Ed.2d 407)* are not controlling in Petitioner's circumstance and has therefore chosen not to even argue the merits of the claim.

Contrary to what the Respondent states, Petitioner never claims that he was sentenced to "life without parole." However, an absence of parole for Petitioner's sentence is clearly established by T.C.A. §40-35-501 (h)(1), (i)(1), and (i)(2) (see Exhibit K). There is *no parole* for any sentence of first degree murder, as is now recognized by the Tennessee courts; the sentence is now read as "Life."

Regardless, the Petitioner is serving a sixty (60) year sentence that is the mandatory minimum for his crime. The Respondent fails to address Petitioner's contention that this sentence denies him a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" as required by *Miller* and its parent cases. Other courts, both state and federal, are recognizing *Miller's* applicability to lengthy mandatory term-of-years sentences. The court in *State v. Null (836 N.W.2d 41 (Iowa 2013) at 72)*, while not a Tennessee case, put it most poignantly: "[t]he prospect of geriatric release... does not provide a "meaningful opportunity" to demonstrate the "maturity and rehabilitation" required to obtain release and reenter society required by *Graham*" and "...those under a lengthy term-of-years sentence should not be worse off than one sentenced to life without parole and given the benefit of an individualized [sentencing] hearing under *Miller*." The Petitioner defers to his argument already made in his brief on remand to support this claim. This issue should be set for an evidentiary hearing.

### GROUNDS TWO AND THREE – PETITIONER'S SIXTH AMENDMENT ISSUES OF INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner's claims of ineffective assistance of post-conviction counsel are presented as cause for his procedural default of his issues of ineffective assistance of trial counsel. On remand, a Petitioner must demonstrate that: (1) state post-conviction counsel was ineffective *(Newbury v. Stephens, 756 F.3d 850, 871 (5th Cir. 2014))*; (2) the claims of ineffective assistance of trial counsel were "substantial" within the meaning of *Martinez*, *Sutton*, and *Trevino (see Newbury, 756 F.3d at 871)*; (3) the ineffective assistance of trial counsel claims prejudiced the Petitioner; and (4) if the first three are

met, that the ineffective assistance of trial counsel claims are meritorious. *Martinez v. Schriro*, No. CV08-785-PHX-JAT, 2012 WL 5936566, at 1 (D.Ariz. Nov. 27, 2012).

Whether a claim is "substantial" under the meaning of *Martinez* and *Newbury* *(supra)* is to say that the claim is "…debatable among jurists of reason, that another court could resolve the [claim] differently, or that the [claim is] adequate to deserve encouragement to proceed further." This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claim. In fact, the statute forbids it.

It is true that the ineffectiveness claims against both post-conviction and trial counsel are controlled by *Strickland v. Washington (466 U.S. 668, 693, 104, S.Ct. 2052, 80 L.Ed.2d 674 (1984))*. However, the Respondent attempts to hold the Petitioner to a higher bar than he is required to meet at this time, for the Petitioner must only show that his claims are substantial in order to warrant an evidentiary hearing, as such hearing would itself be required to prove prejudice to the Petitioner and the merit of the claims.

Petitioner would also like to address a few points regarding each specific claim in order to refute the Respondent's assertions regarding those claims:

### a) Claim 1: Trial counsel failed to attempt suppression of Petitioner's statement under the premise that it was coerced. (D.E. #60, pg. 11)

While it is true that Petitioner's post-conviction counsel briefed this issue as trial counsel's failure to "litigate all potentially available grounds for suppression of Petitioner's statements," post-conviction counsel specifically argued this issue as a failure to raise Fourth Amendment grounds of unauthorized search and seizure. The Respondent is playing word games in order to attempt to

confuse the court; the Sixth Circuit has already determined that *Sutton* is controlling in these claims. The only question is whether Petitioner can show that he has *substantial* claims of ineffectiveness amounting to cause.

Additionally, in order to show prejudice to the Petitioner, this claim must be taken *in context* with Petitioner's other IAC claims. If the Petitioner's custodial statement had been suppressed, the Petitioner would have been free to reveal the truth of the situation unimpeached and would have been less likely to give in to trial counsel's pressure not to reveal evidence of Petitioner's mental illness. (See Exhibits A and N)

The Respondent recounts facts presented by the state at trial as somehow debunking any merit to the suppression of the statement, but the Petitioner at no time, now or then, denied being the one who killed the victim. The circumstances of the crime, and not the perpetrator, were all that was in dispute; again, the prejudice of not suppressing the statement must be taken in context with *all* of Petitioner's IAC claims.

The Respondent also relies on the state court of appeals having previously determined that suppression of the statement would have been meritless, but the state court of appeals was not, at that time, aware of these errors of trial counsel. If the state court of appeals were aware of the issues the Petitioner now raises, it would not have made the determination that suppression of the statement was meritless.

The Respondent also apparently argues that strategic choices of counsel should be considered sacrosanct and infallible. However, even "strategic choices

made by trial counsel are not valid if those choices were uninformed due to inadequate preparation." (*Hellard v. State* (629 S.W.2d 4, 9 (Tenn. 1982))

The Petitioner further defers to his argument already made in his brief on remand. This issue should be set for an evidentiary hearing.

b) **Claim 3: Counsel failed to request a curative instruction after the prosecutor elicited inflammatory and prejudicial remarks on direct examination of the victim's son in an effort to suggest a decision from the jury on an improper basis. (D.E. #60, pg. 14)**

As the Petitioner explained in his brief, and the Respondent is correct in, this issue *standing alone* is not enough to find ineffectiveness of trial counsel. However, the Petitioner presents it for cumulative consideration with his other IAC claims (cumulative consideration is appropriate, as argued below and in Petitioner's brief on remand).

Additionally, the Respondent spends significant time explaining how the fact that other proof that the Petitioner killed the victim somehow makes this prejudicial and inflammatory exchange between the prosecution and its witness harmless. It does not, as the disputed issue was the *circumstance* of the killing, not the perpetrator. And though trial counsel objected twice, that does nothing to mitigate the fact that he failed to request a curative instruction, and thus none was given.

The Petitioner further defers to his argument already made in his brief on remand. This issue should be set for an evidentiary hearing.

c) **Claim 4: Counsel failed to object to the graphic description of gruesome photographs of the deceased by Agent Roger Turner of the TBI after they had already been deemed inadmissible and of little to no probative value by the trial court. (D.E. #60, pg. 16)**

The Respondent contends that Agent Turner merely described the crime scene, and that the Petitioner had no objections to the description by the medical examiner. However, there is a difference between the two testimonies. The medical examiner's description of the body was professional and with the sole intent of describing the cleaned wounds. Agent Turner's descriptions were overly graphic and morbid. "There's brain matter spread on the ground and on the items that are on the bed." "... the skin is cut open. The skull is cracked." "... There's blood all over; blood has seeped into the eyes." "... You can see where his skull has been opened up, and there's an indentation there. You can see an obvious wound, allowing access to the brain." "Question: Could you see inside his head? Answer: Yes, you could." These are excerpts from Agent Turner's testimony, and his full testimony is found on 4:377-416. These are just a few of his comments where "the wounds were extensive" or "the victim was obviously dead" would have sufficed. The court had invited trial counsel to object to any descriptions he found inflammatory, but trial counsel did not object.

The Petitioner further defers to his argument already made in his brief on remand. This issue should be set for an evidentiary hearing.

d) **Claim 5: Counsel failed to cross-examine Dr. Cynthia Gardner to clarify her prejudicial and misleading statement that the victim would have still been alive for two to four minutes after the assault began. (D.E. #60, pg. 17)**

The Respondent states that the "Petitioner provides no support from the record for this claim, and does not offer anything other than his lay opinion to support his assertions." There's a very good reason for this: there's no support from the record because *trial counsel did not cross-examine the medical examiner*

*on this issue*; the Respondent makes Petitioner's argument for him. However, testimony that "the victim lived for two to four minutes" leaves open the *very real* possibility in the mind of the jury that he was conscious and suffering during that two to four minutes.

The Petitioner further defers to his argument already made in his brief on remand. This issue should be set for an evidentiary hearing.

e) **Claim 6: Counsel failed to call Petitioner's mother, Karen Hughes, as a material witness despite her willingness to do so. (D.E. #60, pg. 19)**

Despite Respondent's contention that the failure to call Petitioner's mother was a strategic choice and therefore devoid of merit, this decision, when examined within the context of all the surrounding circumstances, shows that it is far outside the "wide range" of what would be considered a professionally competent decision. Even if counsel was afraid that the prosecution would accuse Petitioner's mother of planting the handgun in the nightstand drawer, a logical look at the facts would show that Petitioner's mother was in *no position* to do that, as expounded in Petitioner's initial brief on remand.

The Petitioner claimed that the victim was abusive to him and his mother. His testimony of the victim's propensity for physical and emotional violence stood alone against eight other character witnesses who claimed the victim's peaceable character. Far from being duplicative, the testimony of Petitioner' mother would have given credibility to Petitioner's testimony.

Also, the Respondent asserts that any alleged beneficial testimony by Petitioner's mother, Karen Hughes, would be speculative as Ms. Hughes is now deceased. While she is deceased, it is erroneous to claim that her testimony is

speculative. Ms. Hughes' affidavit is included in this federal habeas corpus petition as Exhibit B and expounds what her testimony would have been had she been allowed to testify. Petitioner would like this affidavit to be accepted into evidence as a deathbed declaration.

While trial counsel never *promised* that Petitioner's mother would testify, she was as much a focus of his opening statements as the Petitioner or the victim. Additionally, the prosecutor seized upon this witnesses' absence during its closing arguments. Regarding the victim's peaceable character, the prosecutor announced to the jury, "The children are unanimous in this, and the ex-wives, mind you, the ex-wives, one is deceased, and *one who didn't testify, is his (Petitioner's) mother, are unanimous that he's non-violent*" (7:837 emphasis added). The prosecutor implied that by Petitioner's mother failing to testify, she had concurred with the other State's witnesses that the victim was non-violent. He continued on 7:842, "And don't you believe that if there was any proof, outside of that boy, of any kind of adequate provocation, that you'd have heard it?" It is beyond question that the failure to call this witness was not a sound trial tactic and greatly prejudiced the defense.

The Petitioner further defers to his argument already made in his brief on remand. This issue should be set for an evidentiary hearing.

f) **Claim 7: Trial Counsel failed to follow up on the very real possibility that a medical problem and surgery that the Petitioner had within two months prior to the incident at bar could have contributed negatively to his actions on the night of his crime. (D.E. #60, pg. 20)**

The Respondent states that Petitioner's surgery was to correct a "deviated septum." While this *was* a part of the surgery, the primary concern was removing

an enormous polyp which was the cause of the deviated septum and had pushed into the prefrontal cortex of his brain. The Petitioner explained in his brief that due to his incarcerated state he is unable to procure the medical records. He will need the assistance of an attorney to contact the surgery center where the surgery was performed, and expert testimony would be required to explain the records and x-rays. This issue veritably requires appointment of counsel and an evidentiary hearing to explore its substantiality and merits.

The Petitioner further defers to his argument already made in his brief on remand. This issue should be set for an evidentiary hearing.

g) **Claim 9: Trial counsel failed to produce available evidence and witnesses to rebut the State's witnesses' testimony of the victim's peaceable character. (D.E. #60, pg. 22)**

Preliminarily, the Millington police report referred to by the Respondent (D.E. #60, pg. 21) was filed on the victim by his daughter and her child, not by his "previous wife and child." The Respondent then goes on later (pg. 23, first paragraph) to confuse this situation with an entirely different one. He states that trial counsel didn't need to present the police report because it had the testimony of Officer William Tully Reed. There might be something to this if it was the same incident, but it is not. Officer Reed was called as a witness regarding a police call received from *Petitioner* regarding an assault by the victim on Petitioner's mother. The police report alluded to by Petitioner (Exhibit H) was filed by the *victim's daughter*, Tina Soich, in 1995. In other words, the police report by Ms. Soich was a separate circumstance which would have shown a propensity for violence by the victim, would have impeached Ms. Soich's

testimony about the victim's peaceable character, and would have shone a doubtful light on the other witness' testimony who claimed the same thing.

The Respondent asserts that Petitioner does not state that his post-conviction counsel was aware of the testimony of these unused witnesses and therefore cannot show that counsel was deficient. If post-conviction counsel was not aware of these potential witnesses, he was less effective than even Petitioner gives him credit for because the police report by Ms. Soich and the hard copy of Mr. Chapman's (trial counsel's investigator) interview of several of the witness (Carr and Quesenberry) were found *in the defense file*. In other words, post-conviction counsel was aware of the statements of these potential witnesses, or he completely failed to investigate the case. Either scenario is deficient performance that prejudiced the Petitioner.

The decision to not call these witnesses cannot be said to have been a sound strategic choice because evidence of the victim's violent nature would have done nothing but help the defense's trial theory of self-defense. However, trial counsel presented *no* evidence of the victim's violent nature other than Petitioner's testimony, relying solely on character witnesses to say, apparently, "the Petitioner was such a nice boy he must not have meant to do this." Without evidence of the victim's violent nature, none of the evidence of Petitioner's good character mattered.

The Respondent apparently believes that post-conviction counsel failing to present these witnesses at the post-conviction hearing somehow *mitigates* the prejudice to Petitioner now. (D.E. #60, pg. 22, second paragraph) Petitioner is

befuddled by this. Failure to present these witnesses on post-conviction is the entire point of this issue being raised now.

The Petitioner further defers to his argument already made in his brief on remand. This issue should be set for an evidentiary hearing.

h) **Claim 10: Counsel failed to thoroughly cross-examine the State's witnesses regarding the supposed peaceable character of the victim. (D.E. #60, pg. 23)**

The reason that Petitioner only cites to one specific instance of counsel's failure to thoroughly cross-examine a witness is because counsel *failed to thoroughly cross-examine the witnesses*. It's not there because counsel *failed to do it*. This is self-explanatory. The Petitioner has simply pointed out an available instance where counsel could have impeached one of the witnesses' testimony with prior evidence in the trial.

The *only* testimony that counsel used or elicited regarding the violent nature of the victim was the Petitioner's. Trial counsel failed to even make the attempt in cross-examination of the prosecution's witnesses.

The Petitioner further defers to his argument already made in his brief on remand. This issue should be set for an evidentiary hearing.

i) **Claim 11: Counsel failed to request that the jury be instructed to 'reckless homicide' and 'criminally negligent homicide,' either one being a much more plausible defense theory than self-defense as the case was presented at trial. (D.E. #60, pg. 25)**

Preliminarily, Petitioner would point out that Second Degree Murder, Voluntary Manslaughter, Reckless Homicide, and Criminally Negligent Homicide are not mutually exclusive – they can all be considered as part of the same case.

Self-defense was waived from the outset in this case. Further, an instruction on reckless and criminally negligent homicide was necessary if taken in context with the other claims of IAC and due to the fact that the thrust of the prosecution was not that the Petitioner *intended to kill* the victim, but only that the Petitioner was aware of the circumstances of hitting the victim with a bat (see full explanation of this in Petitioner's brief). Admittedly, this argument would have been bolstered if the Sixth Circuit had allowed the Petitioner to present his claims of appellate IAC regarding the inaccurate jury instruction, but they did not. However, this is still another cumulative error committed by trial counsel.

The Petitioner further defers to his argument already made in his brief on remand. This issue should be set for an evidentiary hearing.

j) **Claim 12: Trial counsel failed to raise a defense of temporary insanity or diminished capacity per Petitioner's request and on grounds communicated to counsel by Petitioner and his parents that Petitioner was "hearing voices" and not under control of his faculties at the time of the offense. (D.E. #60, pg. 26)**

The Respondent has succeeded in befuddling the Petitioner yet again. He claims that Petitioner did not present the psychiatric report which states a probable diagnosis of schizophrenia. This is not true. This report was presented as Exhibit D with his initial filing, and other psychiatric evidence exists as Exhibits E, I, and O. Petitioner made clear that he did not refile Exhibits A through I as these were already on file with both the Court and the Attorney General's Office from the pre-remanded federal habeas petition.

The report does in fact give a probable diagnosis of schizophrenia, though Dr. Hutson believed that Petitioner only suffered from P.T.S.D. based on what

little the Petitioner revealed to him. Dr. Hutson's affidavit (Exhibit O) was presented to validate the Exhibit D report and provide more information regarding his thoughts and opinions.

The Exhibit D report was available to trial counsel, despite assertions by the Respondent. In fact, this was the primary reason that Petitioner's petition for writ of error coram nobis was denied by the state appellate courts – that there was no newly discovered evidence because *trial counsel was aware of the report. (see Atkins v. State, No. W2010-00092-CCA-R3-C, 2010 WL 4274737 (Tenn. Crim. App. Oct. 26, 2010), perm. app. denied (Tenn. Feb. 16, 2011).)*

Likewise, trial counsel's decision to go to trial based on self-defense as opposed to arguing insanity (or reckless / criminally negligent homicide) cannot be considered a sound tactical decision. He took Petitioner to trial on a self-defense theory where there was no weapon found in the victim's bedside table, the Petitioner instigated the confrontation, and trial counsel was fully aware that Petitioner had mental problems and did not kill the victim in direct self-defense.

The Petitioner further defers to his argument already made in his brief on remand. This issue should be set for an evidentiary hearing.

## GROUND FOUR - THE CUMULATIVE EFFECT OF THE ERRORS OF TRIAL COUNSEL RENDER THE TRIAL FUNDAMENTALLY UNFAIR

The Respondent claims that cumulative error consideration of his claims does not provide Petitioner a basis for relief, citing *Lorraine v. Coyle (291 F.3d 416, 447 (6th Cir. 2002))*, "the Supreme Court has not held that *distinct* constitutional claims can be cumulated to grant habeas relief" (emphasis added). The functional caveat here is

"distinct." Petitioner only requests cumulative error consideration of his Sixth Amendment IAC claims, which are not distinct from each other and are explicitly allowed cumulative consideration by precedent. *(State v. Mitchell*, 753 S.W.2d 148; *Cargle v. Mullin*, 317 F.3d 1196, 1206-07, C.A.10 (Okla.2003))*.

The Petitioner further defers to his argument already made in his brief on remand. This issue should be set for an evidentiary hearing, and his trial (and by proxy post-conviction) IAC claims should be given consideration for cumulative error.

## CONCLUSION

Petitioner prays this Honorable Court appoint counsel and set his case for an evidentiary hearing, and thereafter grant relief pursuant to that requested in his remanded habeas corpus petition, or any other relief the Court deems fit and proper.

Respectfully submitted,

_____

Howard J. Atkins #327480
W.T.S.P. Site 1
P.O. Box 1150
Henning, TN 38041-1150

## CERTIFICATE OF SERVICE

I, hereby certify that a true and exact copy of the foregoing has been forwarded via, First Class Mail, postage prepaid, to the following individual(s):

**Michael M. Stahl, Assistant Attorney General**
**Attorney General's Office**
**425 5th Ave. N.**
**P.O. Box 20207**
**Nashville, TN 37202-0207**

This the 15th day of December, 2015.

Respectfully,

_____

Howard J. Atkins
W.T.S.P. Site 1
P.O. Box 1150
Henning, TN 38041-1150